IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01208-CNS-NRN

KEITA VANTERPOOL,

Plaintiff,

v.

FEDERATION OF CHIROPRACTIC LICENSING BOARDS;
CAROL WINKLER; and
KARLOS BOGHOSIAN;

Defendant.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Dkt. #15)**

---

**N. Reid Neureiter
United States Magistrate Judge**

This matter is before the Court on an Order (Dkt. #16) from Judge Regina M. Rodriguez[1] referring Defendants' Motion to Dismiss (Dkt. #15). Plaintiff, Dr. Vanterpool, responded to the Motion to Dismiss (Dkt. #18) and Defendants replied. (Dkt. #23.)

The Court heard oral argument on August 25, 2022. (*See* Dkt. #30.) The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED.**

---

[1] This matter was reassigned to Judge Charlotte N. Sweeney upon her appointment as a United States District Judge. (Dkt. #21.)

## BACKGROUND[2]

Dr. Vanterpool is the Vice President of the Federation of Chiropractic Licensing Boards ("FCLB") and a member of the FCLB Board of Directors (the "Board"). (Dkt. #1 at 1, ¶ 1.) FCLB is a nonprofit corporation under the laws of Wyoming with a principal place of business in Colorado. (*Id.* at 2, ¶ 8.) Defendant Karlos Boghosian is the past President of FCLB and Defendant Carol Winkler is the current President. (*Id.*, ¶¶ 9–10.)

Dr. Vanterpool is eligible for candidacy for FCLB President at the elections to be held in May 2023 and had intended to run for the position. (*Id.* at 1, ¶ 1; *see also id.* at 3, ¶ 19.) However, on March 5, 2022, FCLB suspended Dr. Vanterpool for six months. (*Id.* at 3, ¶ 20.) As a result of the suspension, Dr. Vanterpool was barred from attending the May 2022 FCLB conference in Denver, Colorado, which she alleges was her (and all candidates) last opportunity to engage with members regarding her candidacy for President prior to the May 2023 election. (*Id.* at 2, ¶ 5.) She therefore "lost opportunities to gain support of new and current members of FCLB, including stakeholder support for the upcoming election, resulting in significant irreparable damage." (*Id.*, ¶ 6.)

Dr. Vanterpool alleges that her suspension was unwarranted, in violation of FCLB bylaws and policies and procedures, and was carried out for discriminatory reasons as she is an African American woman. (*Id.* at 3, ¶ 20.) According to Dr. Vanterpool, FCLB claimed that she had violated FCLB policies and engaged in activities

---

[2] Allegations in this section are taken from Dr. Vanterpool's Complaint for Monetary and Temporary, Preliminary, and Permanent Injunctive Relief (the "Complaint"). (Dkt. #1.) All non-conclusory allegations are presumed true for the purposes of the motion to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

inconsistent with those expected of FCLB Board members, but FCLB never identified any policies or the allegedly inconsistent activities. (*Id.* at 4, ¶ 4.) Dr. Vanterpool claims that FCLB instead "attempted to silence a political rival and discriminate against [her]" based on her race, as she is the only African American officer in the Board's history. (*Id.*, ¶ 25.)

Dr. Vanterpool also alleges a history of allegedly discriminatory conduct against her (*see generally id.* at 4–6, ¶¶ 26–35) and disparate treatment compared to white Board members. (*See generally id.* at 6, ¶¶ 36–41.) For example, she claims that, while serving as Treasurer of FCLB, she acted pursuant to FCLB policy and refused to reimburse a cash tip incurred by Executive Director Dr. Jon Schwartzbauer without a receipt. (*Id.* at 4, ¶ 27.) Dr. Boghosian instructed her to approve the reimbursement, and threatened that if she did not, he would usurp her authority as Treasurer and approve the reimbursement himself. (*Id.*) Dr. Vanterpool explains that Dr. Boghosian did not attempt to interfere with other non-African American Board members in the performance of their official roles. (*Id.* at ¶ 28.) She also alleges that during online voting for the FCLB elections in 2021 when she was ran for Vice President, delegates complained that they were unable to cast votes for Dr. Vanterpool. (*Id.* at 5, ¶ 30.)

Dr. Vanterpool also alleges that she received worse treatment than white FCLB members. As one example, a white member was fined by the Texas Department of Insurance for fraud. FCLB suspended this member for only three months, while Dr. Vanterpool was suspended for six months. This member was allowed to attend the annual meeting, whereas Dr. Vanterpool was not. (*Id.* at 6, ¶ 38.)

3

Based on these allegations, Dr. Vanterpool brings claims for breach of contract, violation of 42 U.S.C. § 1981, and violation of 42 U.S.C. § 1985. She seeks injunctive relief, declaratory judgment, and an award of attorneys' and expert witness fees under 42 U.S.C. § 1988, as well as monetary damages.[3]

Defendants have moved to dismiss all claims against them for failure to state a claim. The Court addresses each claim below.

## LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two

---

[3] Dr. Vanterpool asserts her request for injunctive relief, declaratory judgment, and an award of attorney and expert witness fees under § 1988 as claims rather than forms of relief. Each will be addressed below.

prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

### I. Breach of Contract

Defendants argue that Dr. Vanterpool's breach of contract claim fails because she has failed to plausibly allege the existence of an enforceable contract. For the reasons discussed below, the Court agrees.

5

Dr. Vanterpool does not allege which state law governs her breach of contract claim. However, as Defendants note, the Board's Policies and Procedures Manual explains that FCLB's business will be conducted in accordance with the laws of Wyoming and Colorado. (*See* Dkt. #15-1 at 15.) It makes little difference which law this Court applies, as the elements required for a breach of contract claim in either state are very similar. Under Wyoming law, "[t]he elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages." *Schlinger v. McGhee,* 268 P.3d 264, 268 (Wyo. 2012) (quoting *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo. 1979)). Thus, a party seeking to recover for a breach of contract must prove the existence of a contract. *Prudential Preferred Props. v. J & J Ventures, Inc.*, 859 P.2d 1267, 1272 (Wyo. 1993). The "basic elements of a contract are offer, acceptance, and consideration." *Boone v. Frontier Ref., Inc.*, 987 P.2d 681, 687 (Wyo. 1999) (citing *Bouwens v. Centrilift*, 974 P.2d 941, 946 (Wyo. 1999)). An offer is a "manifestation of assent to enter into a bargain." *Bouwens*, 974 P.2d at 946. Consideration may be demonstrated by a bargained for performance or return promise consisting of "an act other than a promise . . . a forbearance, or . . . the creation, modification, or destruction of a legal relation." *Prudential Preferred Props.*, 859 P.2d at 1272.

Similarly, "[u]nder Colorado law, a breach of contract claim has four elements: '(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.'" *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., LLC*, 887 F.3d 1003, 1017–18 (10th Cir. 2018) (quoting *W. Distrib. Co. v. Diodosio*, 841 P.2d

6

1053, 1058 (Colo. 1992)). "An enforceable contract must be supported by consideration." *Butera v. Crane*, No. 13-cv-03327-RBJ, 2015 WL 5562175, at *2 (D. Colo. Sept. 22, 2015). "In the context of most written contracts, there is a presumption that the contract is supported by consideration." *Id.* [A] promise exchanged for a promise imposes mutual obligations and is sufficient consideration to render the contract enforceable." *Vernon v. Qwest Commc' ns. Intern., Inc.*, 857 F. Supp. 2d 1135, 1154 (D. Colo. 2012) (quoting *DeFeyter v. Riley,* 43 Colo. App. 299, 606 P.2d 453, 454 (1979)).

Under Count I of her Complaint (the breach of contract claim), Dr. Vanterpool alleges that the "FCLB Board of Directors Policies and Procedures Manual governs the Board's operations and are legally enforceable as a contract among members of the Board." Dr. Vanterpool claims that FCLB[4] failed to comply with the Policies and Procedures Manual by failing to investigate the complaint allegedly made against her and failing to bring the complaint to the Board for discussion during an executive session. (Dkt. #1 at 7, ¶¶ 43–44.)  Defendants contend that Dr. Vanterpool's breach of contract claim fails because it is expressly premised on the Policies and Procedures Manual, which they argue is not an enforceable contract because there was no offer and acceptance and no exchange of consideration.

In her response, Dr. Vanterpool argues that, under both Colorado and Wyoming law, the FCLB's *bylaws* (not the Policies and Procedures Manual as alleged in the

---

[4] In her response to the Motion to Dismiss, Dr. Vanterpool clarified that her breach of contract claim is asserted only against FCLB and not the individual defendants. (*See* Dkt. #18 at 3.)

Complaint) are contractual in nature and are to be interpreted under the principles of contract law. (Dkt. # 18 at 2.)

Bylaws can form the basis of a breach of contract claim. Under both Colorado and Wyoming law, a corporation's bylaws are contractual in nature and interpreted using the same principles. *See Case v. Sink & Rise, Inc.*, 297 P.3d 762, 766 (Wyo. 2013) (noting "it is well settled that bylaws are contractual in nature" and "interpreted according to the principles applicable to the interpretation of contracts.") (internal citations and quotations omitted); *P.F.P. Fam. Holdings, L.P. v. Stan Lee Media, Inc.*, 252 P.3d 1, 3 (Colo. App. 2010) ("In construing corporate bylaws, we apply the same rules used to interpret statutes, contracts, and other written instruments.") (citations omitted). This applies with equal force to nonprofit organizations. *See Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Ass'n, Inc.,* 478 P.3d 1171, 1179 (Wyo. 2021) (acknowledging that Wyoming nonprofit homeowners association's bylaws were "contractual in nature" and interpreting them according to contract principles); *Bloom v. Nat'l Collegiate Athletic Ass'n*, 93 P.3d 621, 625 (Colo. App. 2004) (interpreting bylaws of voluntary, unincorporated associated under principles of contract interpretation).[5]

---

[5] Defendants also argue that Dr. Vanterpool is an officer and board member of FCLB, not a shareholder. They suggest that, to the extent the bylaws create a contract, such contract exists between FCLB and its shareholders, and Dr. Vanterpool has not alleged she is a shareholder. (Dkt. #22 at 3 (citing *P.F.P. Family Holdings,* 252 P.3d at 3 (A corporation's "bylaws constitute a contract between the corporate entity and its *shareholders*.").)  This argument is dubious. As a non-profit organization, it appears FCLB has members, rather than shareholders. *See, e.g.* Wyo. Stat. Ann. §§17-19-101–1807 (discussing rights and obligations of members, not shareholders and even permitting *members* to bring derivative cause of action); *Bloom*, 93 P.3d at 625 (referring to bylaws of nonprofit as contract between entity and its members).

However, Dr. Vanterpool's Count I does not allege the bylaws as the basis of her breach of contract claim and she cannot amend her complaint by adding or changing factual allegations in response to a motion to dismiss. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984) (holding that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citations omitted). The Court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the Complaint, and the allegations as currently pled are insufficient.

Moreover, though Dr. Vanterpool elsewhere generally alleges that Defendants' conduct violated FCLB's bylaws (*see* Dkt. #1 at 1, ¶ 1; *id.* at 2, ¶ 3; *id.* at 4, ¶ 24) and incorporates these allegations are incorporated into breach of contract claim (*id.* at 7, ¶ 42), such allegations are insufficient because she does not allege which provision of the bylaws was breached. Indeed, on review of the bylaws, the Court cannot identify a relevant provision.[6] Thus, even if Dr. Vanterpool can base her breach of contract claim on the organization's bylaws, such claim is not plausibly alleged. *See Stender v. Gerardi*, No. 07–cv–02503–EWN–MJW, 2008 WL 4452117 (D. Colo. Sept. 30, 2008) (plaintiffs failed to state a claim for breach of contract "because they have not adequately indicated which provisions of which contracts allegedly contain" the rights violated) (citing *Parrish v. Nat'l Football League Players Ass'n*, 534 F. Supp. 2d 1081,

---

Dr. Vanterpool has alleged that she is a member of the organization. (*See* Dkt. #1 at 2, ¶ 11.)

[6] To the extent some provision of the Policies and Procedures Manual was breached, Dr. Vanterpool has not alleged that the Policies and Procedures Manual is incorporated into the bylaws.

1094 (N.D. Cal. 2007) ("[t]o plead the legal effect of a contract" in place of its actual language, plaintiffs must "allege the substance of its relevant terms")).

### II. Violation of 42 U.S.C. § 1981

Defendants next argue that Dr. Vanterpool's 42 U.S.C. § 1981 claim fails. The Court agrees.

Section 1981(a) provides: "All persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." The statute defines the term "make and enforce contracts" to mean "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(c).

To state a claim for violation of § 1981, a plaintiff must allege facts showing that: 1) she is a member of a protected class; (2) the defendant intended to discriminate against her on the basis of race; and (3) the discrimination related to one or more activities enumerated in the statute, including the right to make or enforce contracts. *See Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001). To make out a claim under § 1981, a plaintiff must show intentional or purposeful discrimination against her. *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995); *see also Guardians Ass'n. of New York City Police Dep't, Inc. v. Civil Serv. Comm'n.*, 633 F.2d 232 (2d Cir. 1980), *aff'd*, 463 U.S. 582 (1983) ("Discriminatory purpose must be pleaded and proven in actions brought under 42 USC §1981.").

As previously set forth, Dr. Vanterpool as failed to plausibly allege a breach of contract claim, so she cannot show that any alleged discrimination was related to one of the activities enumerated in the statute. Absent a valid breach of contract claim, the § 1981 claim fails and should be dismissed.

Defendants further argue that Dr. Vanterpool's claim fails because she has not plausibly alleged that race discrimination was the but-for cause of the alleged interference with her right to make and enforce contracts. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (reaffirming that "to prevail, a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right.") The Court disagrees and states that it does not base its dismissal on this argument.

Specifically, Defendants argue that Dr. Vanterpool's own allegations demonstrate that race was not the "but for" cause of the allegedly discriminatory conduct she experienced. But Defendants place too much weight on Dr. Vanterpool two allegations that Defendants suspended her because she is an African American woman *and* in order to silence a political rival. (Dkt. #1 at 4, ¶ 25; *id.* at 9, ¶ 58.) Political rivalry does not mean that race was not the "but for" cause of Defendants alleged discriminatory conduct. Indeed, it is plausible that Defendants treated Dr. Vanterpool as a political rival because of her race. The Court cannot say that, at the motion to dismiss stage, two brief references to Defendants conduct of silencing Dr. Vanterpool as a "political rival", made in the same sentence as allegations of race discrimination, defeat the § 1981 claim when the Complaint is replete allegations raising an inference of race discrimination (*see, e.g.*, *id.* at 5–6, ¶¶ 26–40) and even specifically alleging that but for

11

her race, Defendants would not have discriminated against her. (*See, e.g.*, *id.* at 3, ¶ 20; *id.* at 7, ¶ 48.) In short, the § 1981 claim fails because Dr. Vanterpool has failed to allege a contract action, not because she failed to plausibly allege race discrimination.

### III. Violation of 42 U.S.C. § 1985

Dr. Vanterpool's third claim for relief is premised on 42 U.S.C. § 1985 and alleges that Defendants Winkler and Boghosian conspired to deprive her of her civil rights. This claim should be dismissed.

Dr. Vanterpool does not specifically allege which subsection of § 1985 under which her claim arises, but it is clear to the Court that the only potential option is § 1985(3).[7] Section 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." The elements of a claim under this statute are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

To the extent Dr. Vanterpool alleges that Defendants conspired to discriminate against her in the making and enforcement contracts under § 1981, such claim fails

---

[7] Section 1985(1) was designed to protect federal officers against interference from persons outside the federal government. *See Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1348 (7th Cir.), *cert. denied*, 434 U.S. 975 (1977); *Lawrence v. Acree*, 665 F.2d 1319, 1328 (D.C. Cir. 1981). Section 1985(2) creates a cause of action against those who "conspire to deter, by force, intimidation, or threat, any party or witness" from attending or testifying in a federal court. 42 U.S.C. § 1985(2); *see* also *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1125 (10th Cir. 1994) (explaining four distinct causes of action under § 1985(2)). Dr. Vanterpool's allegations have no relation to either of these clauses.

because, as previously set forth, her breach of contract and § 1981 claims fail. To the extent she claims some different deprivation of equal protection or privileges and immunities under the law, the basis of such claim is not clear to the Court or the Defendant.[8] The § 1985(3) claim is, therefore, subject to dismissal.

Further, Dr. Vanterpool has failed to adequately allege a conspiracy. A § 1985(3) conspiracy must be pled with more than "conclusory allegations that defendants acted "in concert" or "conspired" without specific allegations to support such assertions. *Merritt v. Hawk*, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001); *see also O'Connor v. St. John's Coll.,* 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on 'vague and conclusory allegations'; but rather, 'must be pled with some degree of specificity.'") (citations omitted); *Paulino v. One Unknown Deputy*, 2006 WL 2088331, *2 (D. Kan. 2006) ("Mere conclusory allegations of a conspiracy with no factual averments are insufficient to state a claim under Section 1985(3)."), *aff'd*, 2006 WL 3190277 (10th Cir. Nov. 6, 2006).

Dr. Vanterpool makes only the conclusory allegation that Defendants entered into an agreement. (Dkt. #1 at 8, ¶ 53.) Though she references Defendants conduct described elsewhere in the Complaint, a review of the allegations demonstrates that they focus only Dr. Boghosian and Dr. Winkler's separate, individual acts of alleged discrimination. There are no plausible allegations of "an agreement and concerted

---

[8] Dr. Vanterpool's Complaint alleges that Defendants conspired to violate her rights under § 1983, but she does not assert a separate § 1983 claim and does not otherwise identify the basis for such claim. Moreover, there are no allegations that that Defendants are state actors and were acting under color of state law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (A § 1983 claim requires that "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State").

action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

### IV. Attorneys' and Expert Fees Under § 1988

Dr. Vanterpool also asserts a separate claim for attorneys' and expert fees under 42 U.S.C. § 1988. Section 1988(b) provides: "in any action or proceeding to enforce a provision of sections 1981, . . . , 1983, [and] 1985 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." Section 1988(c) provides: in awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 . . . of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."

The statute does not provide for a separate cause of action for attorneys' fees and experts. Instead, these are simply remedies available to the prevailing party at the Court's discretion. *Villegas v. Galloway,* No. 10-20821, 2012 WL 45417, at *3 (5th Cir. Jan. 9, 2012) ("On its face, § 1988 does not provide for a separate cause of action, only for recovery of attorney's fees and expert fees to parties prevailing on certain other causes of action."); *see also Singer v. Nev. ex rel. Dep't of Transp.,* No. 3:09-cv-0696-LHR-RAM, 2011 WL 1627117, at *1 n. 2 (D. Nev. Apr. 27, 2011) ("A request for attorney's fees is a remedy available to a prevailing party in a civil rights complaint [;] it is not a separate cause of action."); *Greene v. Phipps,* No. 7:09-cv-00100, 2009 WL 3055232, at *1 n. 1 (W.D. Va. Sept. 24, 2009) ("Section 1988 allows a prevailing party in a § 1983 action to recover attorney's fees; it is not a separate cause of action."); *Gollomp v. Spitzer,* No. 1:06-cv-802, 2007 WL 433361, at *7 n. 6 (N.D.N.Y. Feb. 5,

2007) ("The Court notes that, to the extent that Plaintiff's tenth cause of action seeks attorney's fees under § 1988, there is no separate cause of action under § 1988[.] [R]ather[,] § 1988 provides a form of relief, which is available only to a party who prevails on a federal civil rights claim.") (internal citations omitted). Thus, this claim should be dismissed. Having failed to state a plausible substantive claim, she is not entitled to attorneys' or expert fees under § 1988 as a remedy.

### V. Injunctive Relief

Count IV of Dr. Vanterpool's Complaint asserts a claim for preliminary and permanent injunctive relief. However, Dr. Vanterpool has not filed a motion for a preliminary injunction. *See* D.C.COLO.LCivR 65.1 ("A temporary restraining order shall be requested by motion filed separately from the complaint."). Further, permanent "[i]njunctive relief is not a separate cause of action; rather it is one form of relief for the other legal violations alleged." *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088 (D. Colo. 2018) (citing *Burns v. Mac*, 2014 WL 1242032, at *2 n.1 (D. Colo. Mar. 26, 2014)). Thus, Dr. Vanterpool's claim for injunctive relief should be dismissed.

### VI. Declaratory Judgment

Dr. Vanterpool's final claim seeks a declaratory judgement "rescinding the suspension against her, a finding that Defendant[9] violated its own procedures, that Defendant unlawfully suspended Plaintiff and unlawfully, removed her from the meeting and electoral process." (*See* Dkt. #1 at 9, ¶ 66.) Defendants argue that this claim should be dismissed because declaratory relief is improper. The Court agrees.

---

[9] Presumably, "Defendant" for the purposes of this claim refers only to FCLB.

The Complaint does not allege under what authority Dr. Vanterpool seeks a declaratory judgment and offers only conclusory allegations concerning her entitlement to such relief.[10] In her response, Dr. Vanterpool simply argues that because she alleges the existence of controversy as it relates to the contract between the parties, she is entitled to a declaratory judgment.

The Declaratory Judgment Act allows a party in an actual case or controversy to ask the court to declare the rights or other legal relations of any interested party seeking such a declaration. "The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or a breach of duty." *United States v. Fisher-Otis Co.*, 496 F.2d 1146, 1151 (10th Cir. 1974). The Declaratory Judgment Act allows parties who are uncertain of their legal rights to seek a declaration of rights from a federal court prior to injury. *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138, 127 S.Ct. 764,

---

[10] Dr. Vanterpool's response clarifies that she seeks declaratory judgment pursuant to Colorado and Wyoming's declaratory judgment acts. (Dkt. #18 at 7–8 (citing Colo. Rev. Stat. § 13-51-106 and Wyo. Stat. Ann. § 1-37-101).) However, "[b]ecause declaratory judgment acts are procedural rules, 'federal law determines whether a district court may properly enter a declaratory judgment in a diversity case. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1194 (D. Colo. 2018) (quoting *Addison Ins. Co. v. Maynard*, 08–cv–00054–WDM–BNB, 2008 WL 2079143, at *2 (D. Colo. 2008)); *see also United Fire & Cas. Co. v. Contractor Heating, Inc.*, No. 08-cv-00328-LTB-CBS, 2008 WL 2572124, at *3 (D. Colo. June 24, 2008) ("When jurisdiction of a declaratory judgment action exists based on diversity of citizenship, as here, federal law will be applied and will control whether or not the court can render a declaratory judgment, [but] state law is to be applied to the underlying substantive issues." (internal citations and quotations omitted)).

166 L.Ed.2d 604 (2007) ("[T]he Act merely provides a different procedure for bringing an actual case or controversy before a federal court . . . .").

Dr. Vanterpool's claim for declaratory judgment incorporates all of the factual allegations from her other claims and requests a "declaratory judgment as to the rights and liabilities of the parties to this Complaint." (Dkt. #1 at 9, ¶ 64.) There are no independent facts alleged. Thus, Dr. Vanterpool's declaratory judgment claim simply seeks to determine her contractual rights.

As previously set forth, however, Dr. Vanterpool has not plausibly alleged a breach of contract claim. Her claim for declaratory judgment should therefore be dismissed. *See Holtzman Enterprises, Inc. v. Cont'l Cas. Co.*, No. 21-CV-01441-CMA-STV, 2021 WL 8153752, at *11 (D. Colo. July 18, 2021) (dismissing declaratory judgment claim after dismissing breach of contract claim because claims were merely duplicative); *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1197 (D. Colo. 2018) (granting summary judgment for defendant on declaratory judgment claim where it was not independent of the breach-of-contract claim).

Moreover, "[t]he exercise of jurisdiction to grant declaratory relief is discretionary rather than mandatory under both federal and Colorado law." *United Fire & Cas. Co.*, 2008 WL 2572124, at *4 (citations omitted). "In fact, even '[w]hether to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court.'" *Id.* (quoting *State Farm Fire and Cas. Co. v. TBG, Inc.*, 760 F. Supp. 178, 180 (D. Kan. 1991)). The Court should decline its discretion here given that the purpose of the Declaratory Judgment Act—to clarify the legal rights of the parties prior to injury—is not served. As previously stated, there are no allegations from which the

Court can infer any rights were violated under a contract or otherwise. Further, any injury has already occurred.

### VII. Request to Amend

In her response to the Motion to Dismiss, Dr. Vanterpool requests "leave to amend in the alternative." D.C.COLO.LCivR 7.1(d) provides that a "motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." The request, which is just a few sentences at the end of Dr. Vanterpool's response brief, violates this rule. Accordingly, this request should be denied without prejudice to Dr. Vanterpool filing a formal motion for leave to amend.

### CONCLUSION

In light of the foregoing, it is hereby **RECOMMENDED** Defendants' Motion to Dismiss (Dkt. #15) be **GRANTED**. Further, Dr. Vanterpool's informal request to amend the Complaint should be **DENIED WITHOUT PREJUDICE** to the filing of a formal motion for leave to amend.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).

Date: November 2, 2022

                                                                           _____
                                                                           N. Reid Neureiter
                                                                           United States Magistrate Judge